Assumpsit.           Clark *vs* Prentice & Weissinger.

APPEAL FROM THE JEFFERSON CIRCUIT.

*Case* 152.           *Assignor and assignee.   Diligence.*

*June* 8.      JUDGE MARSHALL delivered the opinion of the Court.

Facts of the case
stated.

THIS was an action of assumpsit, brought by Clark as the assignee, against Prentice & Weissinger, as the assignors of a note executed by John Stivers to Allen & Merrick, for $1258, due on the 25th of July, 1839; and the sole question is, whether due diligence was used in pursuing the obligor? By various *mesne* assignments, which are without date, the note came to Prentice & Weissinger, who assigned it, without date, to George Clark or order. On the 25th of August, 1839, Clark brought suit, by petition and summons, against the obligor, and on the same day the process was served, which was in time for the September term of the Jefferson Circuit Court, the first regular term after the note became due; and although by the statute regulating proceedings in the Jefferson Circuit Court, the first Monday in each month was made a return day for process, and petitions might be called on the succeeding Wednesday in each month, yet as it was barely possible for the process to have been served after the note became due, in time for the petition to have stood for trial on the Wednesday after the first Monday in August following, as the note may not have been assigned before *it fell due*, and as there was, in fact, no call of *the petition* docket either in August or September, nor until October, when this case was called for trial, on a demurrer to the petition, we are of opinion, as the case now appears, that there was no failure of diligence in bringing the suit.

It appears, however, that in October, the demurrer was

An amendment
to Pet. & Sum.
by plaintiffs, by
adding the words
'or order,' which
had been omit-

sustained, because in copying into the petition the assignment from Prentice & Weissinger to Clark or order, the words "or order," were omitted, and the plaintiff having amended the petition in this respect, a continuance was

granted to the defendant on account of this amendment; by which the judgment was postponed until the 11th day of December following, there having been no intermediate call of the petition docket. Whether the demurrer was properly sustained or not, the amendment certainly occasioned no surprise to the defendant, and therefore, constituted no ground for continuing the cause, against the consent of the plaintiff: *Watts* vs *McKinney*, (1 *Marshall*, 561;) and the plaintiff, therefore, should not be prejudiced in his remedy against his assignors, by this error of the Court.

ted in setting out an assignment, constitutes no ground for a continuance.

The judgment having been rendered on the 11th of December, 1839, an execution issued on the 10th day of January, 1840, under a general order of the plaintiff's attorneys, previously made in the memorandum book of the Clerk, directing him to issue executions as soon as practicable, on all judgments obtained by them. This execution was indorsed by the Sheriff as having come to his hands on the 25th of January, 1840, and was, on the same day, returned "no property found;" and the principal difficulty on the question of due diligence, arises on these facts, and the explanation given of them in the evidence.

The steps taken by assignee to recover of the debtor.

It appears that most of the attorneys in the Jefferson Circuit Court had made memorandums for the issuing of executions, similar to that above stated, and that such memorandums were acted on by the Clerk, who accounts for the delay in issuing this execution by stating that numerous judgments were obtained at the December term; that soon after the termination of ten days from the rendition of the judgment, the Christmas holidays came on, and then the 8th of January, on which occasions it was not usual to get the services of the deputies in the office; and that this execution was issued in its regular rotation and as soon as the business of the office would permit. It appears further, from the statement of the Clerk and Sheriffs, that the Sheriff of Jefferson County had no office in Louisville, but that there was and had been, for many years in the Clerk's office, a box, known to all having business in the office as the Sheriff's box, in which it was the constant and notorious habit of the Clerk to place

executions and other process, when issued, and to which the acting Sheriffs resorted daily for such process, and that it was the invariable practice, with some casual exceptions, for the Sheriffs, when they took an execution out of the box, to have it entered on the execution book, which would show the time it came to the officer's hands. The Clerk also stated that this execution against Stivers, when issued as above stated, was lodged in the Sheriff's box, but that the execution book did not show when it was received by the Sheriff, though it showed that it was returned on the 25th of January.

The deputy Sheriff, who received and returned the execution, did not particularly remember that it came to his hands on the 25th of January, as stated in the indorsement, but that was his best recollection; he was also under the impression, though by no means certain, that it was then placed in his hands by one of the attorneys for the plaintiff. Executions were taken from the Sheriff's box and entered on the execution book on the 10th day of January, and for many successive days thereafter, and one standing next on the execution book to that now in question, was entered as taken out on the 15th of January.

It was further proved, that in November, 1838, executions came to hand against Stivers, to the amount of $30,000 or more, all of which had been returned "no property;" that other executions which issued through the year 1839 and 1840, had been returned in the same way, with the exception of one, issued in the fall of 1839, on which, in consequence of a discovery by the plaintiff therein, of some household goods, $30 or $40 had been made; and that during the year 1839 and 1840, he had been utterly and hopelessly insolvent, so that the Sheriffs, on finding executions against him in their box, did not think it necessary to take them out, except for the purpose of returning on them "no property found," which they felt authorized to do at once, from having made diligent but unsuccessful search for property.

Upon these facts, stated rather more in detail by the

It has never been held "that the assignee was witnesses, the Court, on motion of the defendants, instructed the jury to find as in case of a non-suit, which

could only have been justifiable on the ground that on the most favorable inferences deducible from the evidence, the plaintiff had failed to show that he had used due or reasonable diligence in prosecuting his remedy against the obligor. But it has never been held that an assignee was bound to use the utmost possible diligence, or to run a race against time, or to use greater diligence than a man of ordinary prudence might be expected to use, if he were solely interested. The plaintiff having been entitled to a judgment at the September term, and having then demanded it, and not being blameable for the continuance and consequent postponement of the judgment, the question is, whether there was a failure of reasonable diligence afterwards, in having the execution issued and placed in the officer's hands. Or in other words, whether the assignee or his attorneys might be allowed to rely upon the general directions given by the attorney and acted on by the Clerk, to issue executions on all judgments obtained by him, as soon as the law and the business of the office would allow, and to trust to the well known routine of business and duty between the Clerk and Sheriff, for placing the execution in the hands of the latter; or whether it was incumbent upon the plaintiff or his attorneys, either to hasten the Clerk in the general performance of his duties, or to require him to issue this execution out of its turn, or to watch for the moment of its emanation and diverting it from the usual course by which executions in that office come to the Sheriff's hands, to undertake its delivery in person.

If Stivers had been merely in laboring or embarrassed circumstances, so that the loss of a day or of a few days in the pursuit of the legal remedy against him, might have occasioned the loss of the debt, ordinary prudence might have dictated to his creditor, acting solely with a view to his own interest, that degree of vigilance which would have avoided the unnecessary loss of a single day. In such a case, extraordinary vigilance and activity might be nothing more than reasonable diligence; and in such a case, if the assignee should trust entirely to the disposition and habit of the Clerk and Sheriff to do their duty under the general standing directions of his attorney, it

---

CLARK
vs
PRENTICE &
WEISSINGER.

bound to use the utmost possible diligence, to run a race against time or to use greater diligence than a man of ordinary prudence might be expected to use if he were solely interested," to recover the debt, in order to preserve his recourse against his assignor.

When the debtor is in laboring circumstances, and the loss of a day or an hour might be material to success in the recovery of the debt, the vigilance of the assignee should be greater.—

CLARK
vs
PRENTICE &
WEISSINGER.

might perhaps be under the peril of losing the debt, if by any casualty and for the want of personal attention, his execution should fall behind its proper time in being issued, or in coming to the Sheriff's hands, and especially if it should appear that by such personal attention, in seeing that the execution was issued and placed in the officer's hands without unreasonable delay, the opportunity of making the debt or any portion of it, had been lost.

In this case there was no motive or necessity for extraordinary activity or attention. So far as regarded the collection of the debt from Stivers, who was technically, actually, and notoriously insolvent, nothing could be made by activity, nothing lost by delay. The proceeding against him was a mere form, intended only to furnish the necessary legal proof of his insolvency, for the purpose of fixing the liability of the assignors. And although this consideration might furnish no sufficient ground for relaxing any rule which has been established for determining the question of due diligence between assignee and assignor, it certainly affords good reason for not giving increased rigor to any existing rule upon the subject.

*—But in a case where the debtor is notoriously insolvent, there exists no reason for increasing the diligence required by the former decisions of this Court.*

Is there then any established rule, prescribing the number of days which may or may not intervene between the expiration of ten days after judgment, when the execution might by law be issued, and the time when it actually issued, or what is perhaps more material, when it comes to the hands of the officer? We know of no other rule on the subject, but that which is contained in the general requisition of due diligence in prosecuting the remedy against the obligor; and this rule does not require the utmost, but only ordinary or reasonable diligence. In the case of *Trimble, &c.* vs *Webb, &c.* (1 *Mon.* 100,) an interval of three months, without regard to any other circumstance, was held to be evidence of a failure in the requisite diligence—the Court observing that the time thus lost "is more than any reasonable man would have indulged in, when he believed his debt was in danger, and savours of indulgence graciously given, by some secret understanding between the parties." In this case, the delay is but about one third as great as in that, and

*The case of Trimble vs Webb (1 Monroe,) cited.*

the utter insolvency of Stivers, from a period long ante-
cedent to the rendition of the judgment, as it would have
rendered any indulgence wholly useless to him, precludes
all inference of the delay having been produced by any
secret agreement between the parties. It was proved in
that case, that during the period of indulgence the debtor
had paid divers sums of money to others.

    In the case of *Passmore* vs *Prather*, (9 *Dana*, 57,)
when the judgment was obtained on the 11th of April,
the first execution came to the officer's hands on the 7th
of May, and was returned on the 12th of August, "no
property found;" and a second execution was issued on
the 3d of Obtober, on which was the same return; the
Court say, "we think this delay in attempting to carry
the judgment into execution, must, *without explanation*,
be considered unreasonable." And the fact that proper-
ty of the debtor had been, about the same time, found un-
der other executions, is adverted to as showing that the
failure to collect the debt in question was owing to neg-
ligence on the part of the assignee, or to such failure of
duty on the part of the Sheriff as would render him liable.
In the case of *Sayre* vs *Bayless*, (1 *B. Monroe*, 304,)
where the suit had not been brought to the first term, and
there had been a delay of two years in prosecuting it to
judgment, the interval from the 13th of July, when the
execution might have issued, to the 22d of the same
month, when it was placed in the Sheriff's hands, is no-
ticed by the Court: but without deciding that the failure
to sue to the first term, and the delay in placing the exe-
cution in the officer's hands would, of themselves, show
want of due diligence, the Court say "when these omis-
sions and failures are taken in connection with the tardi-
ness and negligence of the plaintiff in the prosecution of
the suit, as manifested by the record, and *unaccounted
for by proof*, we cannot doubt there has been an entire
failure" to show due diligence, &c.

    These and other cases show that there is no fixed rule
upon this subject; and the fair deduction from them is,
that a delay in placing the execution in the office's hands,
even greater than that which occurred in the present case,
might be so explained or accounted for as not to show

CLARK
*vs*
PRENTICE &
WEISSINGER.

The case of *Pass-
more* vs *Prather*,
(9 *Dana*, 57,) &
*Sayre* vs *Bayless*,
(1 *B. Monroe*,
304,) cited.

CLARK
vs
PRENTICE &
WEISSINGER.

A memorandum by plaintiff's attorney, on the Clerk's memorandum book, to issue executions in all cases in which he is concerned as soon as due; and that the Clerk did, as soon as the business of his office would permit, issue the execution, and place it in a box in his office, where it was the practice to place all process going into the Sheriff's hands, and where the Sheriff was daily in the habit of calling and receiving process, and from which he did receive the execution, is reasonable diligence by the assignee in this case and in cases ordinarily.

a want of due diligence. In this case the plaintiff attempts to explain the delay by proof of circumstances of which there is no trace and no substitute in the other cases.

1. His attorney had, like others, given a general direction to the Clerk, to issue their executions as soon as the law and the business of the office would permit, and as from the previous observance of this direction by the Clerk, they had a right to expect its observance in this case, there was no necessity to give the same direction with particular reference to it; and there was no ground for requiring that it should be issued out of its turn.

2. The evidence of the Clerk is, that he did in fact issue this execution as soon as the business of the office would permit; and although the Clerk may not have shown that he expedited the business of his office as much as he might have done, there does not appear to have been any such failure in this respect as called for the interposition of the plaintiff or his attorneys, if indeed that could have availed any thing. We are of opinion, therefore, that there was not a failure of due diligence on the part of the plaintiff, in regard to the issuing of the execution.

3. And with regard to the placing of the execution in the hands of the Sheriff: as it was the notorious, long established, and almost invariable practice of the Clerk to place all executions, as soon as issued, in the Sheriff's box, the direction given by the plaintiff's attorney must be regarded as indicating that the same disposition should be made of their executions including this one; and that was not only the usual course, but as the Sheriff had no office, and it might often be impossible to find him, the placing of the executions in his box at the Clerk's office, to which he and his deputies resorted daily for process, may be regarded not only as the regular and usual mode of delivery, but as a reasonably certain, if not the most certain means of having the execution in his hands within a day after its actual emanation. In cases calling for extraordinary activity, other means of more immediate and perhaps more certain delivery might be resorted to: but the fact clearly inferable from the evidence, that by the

general usage of the Clerk, the Sheriff and the attorneys, this was the usual mode in which executions in that office came to the Sheriff's hands, shows that in ordinary cases when there was nothing to be gained by particular activity, and nothing to be lost by the delays incident to the usual mode of proceeding, the executions were generally left to find their way to the Sheriff through this box at the Clerk's office; and as in this case, there was no motive for extraordinary vigilance or exertion, we think the plaintiff and his attorneys might, under the general memorandum of the latter, leave this execution to the usual course and routine of business and duty, at the peril indeed of losing the recourse upon the assignor, if in consequence of unusual delay, any means of satisfying the execution had been lost, but without being subject to the imputation of negligence by the mere fact that they had trusted to the usual mode of passing the execution from the hands of the Clerk to those of the Sheriff; and although by some unexplained casualty, (to which however, under the motion for a non-suit, the most favorable construction authorized by the evidence, is to be given,) there seems in this case to have been an unusual delay in the passage of the execution from the hands of the Clerk to those of the Sheriff, which might have been avoided by the personal attention of the plaintiff or his attorneys: yet as nothing was lost to the execution by the delay, and nothing could have been gained for it by the most prompt action in regard to it, and as it does not appear that in trusting to the usual course adopted in the office, and in failing, for fifteen days, to ascertain whether the execution had, in fact, been placed in the box by the Clerk, and taken from it by the Sheriff, there was any departure from the usual practice in ordinary cases, we find no authority in any of the cases, for deciding peremptorily, that this failure amounts to such negligence or to such a want of diligence as should forfeit the recourse of the assignee against the assignor. On the contrary, we are of opinion, upon the facts proved and the inferences which they authorise, that even if the execution did not come to the Sheriff's hands until the 25th of January, which is not absolutely certain, there was such reasonable

diligence in the suit against the obligor, as in the absence of other testimony, authorized a recovery in this suit against the assignor.

Wherefore, for the error of instructing the jury to find as in case of a non-suit, the judgment is reversed and the cause is remanded for a new trial, in conformity with the principles of this opinion.

*Fry & Page* for appellant: *H. Marshall* for appellees.